UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES W. DAVIS,  Case No.: 4:11-cv-00107-RH-WCS

    Plaintiff,

vs.

STATE OF FLORIDA,
DEPARTMENT OF JUVENILE JUSTICE,

    Defendant.
_____/

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This filing is made by the Defendant, **State of Florida, Department of Juvenile Justice**, following the Pre-Trial Conference of February 15, 2012, wherein the Court granted additional time to file supplementary exhibits and memoranda in support of Defendant's Motion for Summary Judgment. Likewise, the Court gave Plaintiff additional time to file responsive pleadings as well. The exhibits referenced herein have been simultaneously filed in a separate document entitled "Exhibits in Support of Defendant's Supplemental Memorandum."

### I.    INTRODUCTION

The Plaintiff cannot articulate concrete facts, other than his own subjective view, that his termination from employment with the Florida Department of Juvenile Justice

was for reasons other than for those given by managers and supervisors who recommended and approved of the decision. This Supplemental Memorandum sets forth the evidence which demonstrates the factual basis for the Defendant's position that it terminated the Plaintiff for legitimate non-discriminatory reasons and that Plaintiff cannot put forth significant probative evidence to show that these reasons were pretextual.

## II.   EVIDENCE

### A.   Employer's Reason for Termination

The evidence is undisputed that the Plaintiff's supervisor at the time of his termination on July 30, 2009 was Mary Mills and that her recommendation to terminate the Plaintiff was based on work performance.[1] It is also undisputed that Supervisor Mills transmitted her recommendation to terminate the Plaintiff to her immediate supervisor, Darryl Olson, then-Assistant Secretary for Residential Services who approved of the recommendation based on the Plaintiff's record of performance issues.[2] During his deposition, the Plaintiff testified that Mary Mills was the only individual within the Department who discriminated against him.[3]

Further, the record is crystal clear that Rod Love, then-Deputy Secretary of the Department of Juvenile Justice, was the final decision maker who reviewed Mary Mills and Darryl Olson's recommendation for termination and gave final approval.[4]

---

[1] Affidavit of Mary Mills.
[2] Affidavit of Darryl Olson
[3] Deposition of James W. Davis: p. 173, lines 6 – 12.
[4] Deposition of Rod Love: p. 9, ln. 19 – p. 10, ln. 2.

Finally, there exists no evidence demonstrating that then-Deputy Secretary Rod Love approved the decision to terminate the Plaintiff for any reason other than poor work performance.[5]

**B.     Deposition testimony of Mary Mills and Darryl Olson**

The deposition testimony in this case offers substantial evidence to support the Defendant's legitimate non-discriminatory basis for terminating the Plaintiff. In response to questioning by Plaintiff's counsel, Mary Mills testified:

> Q:     Why did you recommend that Mr. Davis be fired?
>
> A:     I recommended that Mr. Davis be terminated due to performance issues.
>
> Q:     What were his performance issues?
>
> A:     Largely having to do with him dealing with his direct reports. I found myself on more – more times than not actually having to field issues related directly to his, his employees.[6]

Plaintiff, by his own admission, testified that Supervisor Mary Mills had performance issues with him. It should be noted that the Plaintiff himself acknowledged in his deposition testimony that his Supervisor Mary Mills "on four to six – on four to six different occasions, she would call me or if she happened to be in Pensacola, she would tell me that she's getting complaints against me and my staff members."[7] Furthermore,

---

[5] Deposition of Rod Love: p. 22, ln. 10 – 13.
[6] Deposition of Mary Mills: p. 25, lines 9 – 16.
[7] Deposition of James W. Davis: p. 150, lines 8 – 12.

Plaintiff admits getting emails from Supervisor Mary Mills about his staff not getting their work done timely.[8]

Darryl Olson, who during all times relevant was the Assistant Secretary, testified that he reviewed the recommendation to terminate the Plaintiff based on work performance.[9] On July 21, 2009, Mr. Olson approved Mary Mills's recommendation that Mr. Davis be terminated.[10] It is clear that Mr. Olson independently considered reports prepared after a neutral, third-party administrative review of Mr. Davis's region in reaching his decision to approve Plaintiff's termination.[11] Mary Mills did not participate in this administrative review process.[12]

## C.    Deposition Testimony of Rod Love

By Order of this Court the deposition of witness Rod Love was taken on February 24, 2012. The record is uncontroverted that:

1.    Mr. Rod Love was the Deputy Secretary of the Department of Juvenile Justice between 2008 and 2011.[13]

2.    During his tenure as Deputy Secretary, Rod Love "oversaw the entire operations of the agency"[14] which included terminations of employees within his purview which included residential operations.[15]

---

[8] Deposition of James W. Davis: p. 153, lines 7 – 11.
[9] Deposition of Darryl Olson: p. 13, lines 6 – 19.
[10] July 6, 2009 Memorandum from Mary Mills to Darryl Olson.
[11] Deposition of Darryl Olson: p. 13, line 11 to p. 17, line 2; p. 17, lines 19 – 24.
[12] Deposition of Darryl Olson: p. 19, lines 2 – 4.
[13] Deposition of Rod Love: p. 4, line 27 to p. 5, line 10.
[14] Deposition of Rod Love: p. 5, lines 19 – 23.
[15] Deposition of Rod Love: p. 6, lines 4 – 12.

3. Rod Love during his time as Deputy Secretary was directly involved in the review process before a termination was initiated.[16]

4. Rod Love acting as Deputy Secretary would make the final decision whether to terminate an employee.[17]

5. Mr. Love reviewed personnel actions on a weekly basis.[18]

6. Mr. Love looked into the reasons for termination behind every recommendation that came to his desk.[19]

7. Mr. Love asked "pertinent questions" in reviewing termination requests.[20]

8. Mr. Love testified that, because he took his job seriously and took the livelihoods of those that came before him seriously, he performed a thorough review of all requests to terminate he received.[21]

9. In some instances Rod Love would deny or modify a request to terminate.[22]

10. Mr. Love identified the July 23, 2009 Memorandum, which bears his initials and was directed to the attention of Supervisor Mary Mills, approving the termination of the Plaintiff.[23] According to Mr. Love, the memorandum "is an

---

[16] Deposition of Rod Love: p. 8, line 25 to p. 9, line 18.
[17] Deposition of Rod Love: p. 9, line. 25 to p. 10, line 2.
[18] Deposition of Rod Love: p. 32, line 13 to page 33, line 3.
[19] Deposition of Rod Love: p. 20, lines 20 – 23.
[20] Deposition of Rod Love: p. 44, lines 16 – 23.
[21] Deposition of Rod Love: p. 17, line 24 to p. 18, line 3.
[22] Deposition of Rod Love: p. 10, line 10 to p. 11, line 9.
[23] Deposition of Rod Love: p. 13, lines 11-23; p. 16, line 20 to p. 17, line 15.

authorization to allow the initiating party to effect the termination, but it is also giving them the authority to offer a resignation in lieu of a termination."[24]

11.  The Plaintiff was SES, meaning selected exempt status, which means the Department does not have to give a reason to the employees for termination.[25]

12.  In reviewing the July 23, 2009 approval memorandum, Mr. Love stated that Mary Mills communicated the reasons for the termination up through the chain of command.[26]

13.  While Mr. Love testified that he did not remember with specificity this instant case[27], he also testified over opposing counsel's numerous objections that he had no reason to believe that he did not follow his practice of thorough review of termination requests with respect to the Plaintiff.[28]

14.  He also testified that he has no reason to believe that the reasons for Plaintiff's termination for any reason other than the Plaintiff's work performance.[29]

15.  Mr. Love is African-American.[30]

The evidence in the form of deposition testimony of Supervisor Mary Mills, then-Assistant Secretary Darryl Olson, and then-Deputy Secretary Rod Love demonstrates that personnel within the chain of command reviewed the recommendation of Mary Mills to

---

[24] Deposition of Rod Love: p. 14, lines 9 – 14.
[25] Deposition of Rod Love: p. 20, lines 10 – 25.
[26] Deposition of Rod Love: p. 21, line 25 to page 22, line 9.
[27] Deposition of Rod Love: p. 30, lines 19 – 25.
[28] Deposition of Rod Love: p. 18, line 14 to p. 19, line 4.
[29] Deposition of Rod Love: p. 42, lines 1 – 10.
[30] Deposition of Rod Love: p. 38, lines 2 – 3.

terminate the Plaintiff based on work performance issues prior to approving the termination.[31]

### III.     MEMORANDUM

**A.     There exists no evidence that Plaintiff was fired for anything other than poor work performance.**

In this case, the evidence shows that the Plaintiff was fired for issues relating to work performance. The record demonstrates clearly that Supervisor Mary Mills initiated the recommendation and communicated her recommendation up the chain of command to terminate the Plaintiff.[32] Her recommendation was to terminate James Davis based on "performance issues."[33]

Similarly, the evidence is uncontroverted that Assistant Secretary Darryl Olson and Deputy Secretary Rod Love reviewed and signed off on the termination.[34]

Mr. Love testified:

> Q.    At this time I would like to show you a document. And, Mr. Love, if you would take a look at the document, and after you're finished reviewing the document, if you could tell me what the document is, if you recognize it.

---

[31] Deposition of Rod Love: p. 41, lines 2 – 8.
    Q. And how is that chain of command structured from Mary Mills up?
    A. From Mary Mills up, it would be Mary Mills as a regional director. Her boss would be the assistant secretary, which would be Darrell [sic] – would have been Darrell Olsen [sic] at the time. And then Darrell Olsen [sic] is a direct – or was a direct report to me.
[32] Deposition of Mary Mills: p. 10, lines 1 – 25.
[33] Deposition of Mary Mills: p. 17, line 24 to p. 18, line 4.
[34] Deposition of Darryl Olson: p. 13, lines 2 – 10.
    Q. What was your involvement in Mr. Davis' termination?
    A. I was the first level supervisor beyond Mary Mills.
    Q. But what role did you actually take in the termination, if anything?
    A. I concurred with Mary's recommendation.
    Q. Based on what?
    A. Based on performance.

7

> A. This is a document that has my initial on it that I went ahead and approved the termination of Mr. James Davis.
>
> Q. And what is the date of the document you have in front of you?
>
> A. The date is July 23, 2009.
>
> Q. And it is from whom to whom?
>
> A. From me to Mary Mills.[35]

Further, in his answer to the seventh interrogatory propounded by the Defendant, the Plaintiff states himself that Deputy Secretary Rod Love had knowledge of his March 24, 2008 reprimand and April 24, 2008 rebuttal as well as his request to have the rebuttal placed in his file. The Plaintiff admitted in his deposition that he had copied Mr. Love when he submitted his rebuttal to his written reprimand.[36] This indicates that Mr. Love had been aware of Plaintiff's performance issues by the time he had approved Plaintiff's termination.

As the United States Supreme Court enunciated in *Texas Department of Community Affairs v. Burdine*, 450, U.S. 248, 252-53, 101 S.Ct. 1089, 1093 (1981), once the Plaintiff establishes a prima facie case the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected . . . for a legitimate non-discriminatory reason."[37]

In *Burdine*, Justice Powell writing for the court stated:

---

[35] Deposition of Rod Love: p. 13, lines 11 – 23.
[36] Deposition of James W. Davis: p. 166, line 17 to p. 167, line 3; 3/24/08 Written Reprimand; 4/24/08 Rebuttal; Plaintiff''s Answers to Defendant's First Set of Interrogatories.
[37] *Burdine* at 254.

> To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence the reason for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant.[38]

In this case, the Defendant has demonstrated clearly that the legitimate non-discriminatory reason for the Plaintiff's termination was work performance. In response to questioning from Plaintiff's own counsel, Mary Mills testified:

> Q. What other issues led to - - what other performance issues did you have with Mr. Davis?
>
> A. This is more of a global, because it's real hard to, without looking at some of the information that I had over the time, but from a global perspective it was really about James getting his staff to do their job. In other words, acting in the management role as opposed to – James spent a large percentage of his time doing staffing. It was demonstrated by the numbers. And I compared those numbers to other folks in comparable positions around the state, other commitment chiefs, and I was saying, James, you need to spend your time as a supervisor, go around to the other circuits, interface with the chiefs. And so James and I had numerous conversations about the number of commitment staffing [sic] that he was doing where I really needed him to supervise his direct reports.
>
> And where I wouldn't have to be fielding the phone calls from folks complaining that his staff weren't on time for their meetings or they didn't do their paperwork timely or those kinds of things. So from a more global perspective, it was really about his performance as a manager more than – and his ability to be a supervisor to his staff.[39]

---

[38] *Burdine* at 255.
[39] Deposition of Mary Mills: p. 27, line 9 to p. 28, line 7.

9

As all of the above referenced testimony indicates, the Plaintiff was terminated for work performance issues. Nothing in the record demonstrates otherwise.

**B.    The Plaintiff cannot establish that the Defendant's reason for termination was false and therefore is unable to establish pretext**

It is fundamental that in establishing pretext the Plaintiff must persuade this Court that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[40] However, in this case, Plaintiff offers nothing beyond mere conjecture.

The 11th Circuit has held that a plaintiff must show pretext with "concrete evidence in the form of specific facts." *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). Furthermore, the 11th Circuit has held that mere "conclusory allegations and assertions" will not suffice. *Id.* at 1308.

Here, the Plaintiff asserts in conclusory fashion that because he was a long time employee it is somehow presumed his dismissal was based on racial animus. However, there is nothing in the record to support this assertion. This assertion is made while the Plaintiff readily acknowledged during deposition testimony that he was a Selected Exempt Service (SES) employee and served at the discretion of management.[41]

The Plaintiff, using various scenarios, alleges that he was discriminated against pretextually:

---

[40] *Burdine* at 256 (citing *McDonnell Douglas Corp. v.. Green*, 411 U.S., at 804-805, 93 S.Ct., at 1825-1826).
[41] Deposition of James W. Davis: p. 84, lines 12 – 25.

1. The Plaintiff alleges he was not chosen to be on a peer view team and that this is somehow evidence of racial animus. However, a clear and concise reading of his deposition testimony demonstrates that he is not certain who selected the peer review team member.[42]

The testimony of Mary Mills corroborates that the *decision* of who would be involved in peer review teams was a decision that "was made at headquarters,"[43] and that she did not "offer up" Mr. Davis, meaning recommend him, to be a part of the peer review team because at the time "two of his circuits had already been reviewed, and there were corrective actions pending in those areas."[44] This testimony demonstrates that Mary Mills did not make the decision of who should be on the peer review team but only offered another employee to be the decision maker at Department headquarters. Nothing in the record provides significant probative evidence that Mary Mills's "offer" of an employee other than Plaintiff to serve on a peer review team was racially based.

2. The Plaintiff alleges he was subpoenaed to testify in a juvenile court proceeding, but that another Department employee testified instead. Somehow this is

---

[42] Deposition of James W. Davis: p. 112, lines 24 – p. 113, line 4.
    Q.    Okay. And are you alleging that Mary Mills selected who would be on the review?
    A.    She had to.
    Q.    Why?
    A.    Why? Because she was the Supervisor. She was my Supervisor at the time.
    Q.    Okay. Mr. Davis, do you know who Darryl Olson is?
    A.    Yes.
    Q.    Did he work at DJJ when you worked there?
    A.    Yes. He was assistant secretary of the residential when I left.
    Q.    Did you know that he's the one that selected the review team?
    A.    No, I did not.
Deposition of James W. Davis: p. 117, lines 13 – 25.
    Q.    Okay. Did you know that the staff there, at Darryl Olson's direction, selected who would be on the review team?
    A.    No, I did not.
[43] Deposition of Mary Mills, p. 14, lines 2 – 15.
[44] Deposition of Mary Mills, p. 14, lines 2 – 15.

11

circumstantial evidence of racial animus the Plaintiff alleges, however no nexus is shown between DJJ employee Shelley McKinney, who the Circuit Court Judge recognized to testify over the Plaintiff, and a purported sinister or racially motivated decision to exclude one employee from testifying. In fact, nothing in the record put forth by Plaintiff demonstrates that he was prevented from appearing in Court pursuant to the subpoena. Plaintiff's complaint is that he was not allowed to testify.

In response to questions from counsel for the Defendant, Plaintiff admitted that he has no evidence that Mary Mills was involved with any decision as to who should testify in court on that particular day.[45]

    3.    The Plaintiff alleges that his March 24, 2008 written reprimand is evidence of discrimination by Mary Mills.[46] However, Plaintiff provides no testimony or evidence suggesting that any reasons behind the reprimand were because of Plaintiff's race. The record shows that the written reprimand was issued about seven months after Mary Mills had become Davis's supervisor.[47] The reprimand enumerates ten expectations of an OMC "Chief" and expresses Mary Mills's expectation that the Plaintiff demonstrate improvement in those areas within 30 days.[48] The Plaintiff has no evidence to show that he ever made an attempt to meet these expectations. He can only speculate that the reprimand must have had a discriminatory basis.

---

[45] Deposition of James W. Davis: p. 162, line 10 to p. 164, line 17.
[46] Deposition of James W. Davis: p. 196, lines 4-13.
[47] PAR form from Personnel File of Mary Mills indicates that Ms. Mills became the North Region Director effective 8/17/07, roughly seven months prior to issuing the 3/24/08 Written Reprimand.
[48] 3/24/08 Written Reprimand.

4.  Finally, the Plaintiff alleges that the subpar evaluation scores he earned from Mary Mills constitute evidence of race discrimination.[49] Again, Plaintiff can only offer conjecture in asserting that subpar performance evaluations even suggest race discrimination. To illustrate, Mary Mills directly supervised other black employees as Director of the North Region.[50] The Plaintiff is unable to present any evidence that Mary Mills rated any other directly reporting black employees at the same level as the Plaintiff. His allegation has no corroborating evidence to support it. In fact, in a written communication to the Department's Equal Employment Opportunity Officer Derrick Elias, Ms. Mills provided a chart showing *other* black employees who she supervised received excellent overall performance ratings between 4 and 5, about two whole points more than what the Plaintiff had earned under her.[51]

The evidence provided with this supplement is unequivocal: the Department considered only Mr. Davis's work performance in its decision to terminate his employment.

**C.   Summary Judgment is appropriate because Plaintiff has not introduced into the record "significantly probative evidence" to demonstrate that the Employer's legitimate non-discriminatory reason for termination was pretext.**

Case law precedent is clear that once the employer puts forth a legitimate reason for termination, the burden shifts back to the Plaintiff to show that the stated reason was pretext. To avoid summary judgment, the Plaintiff must introduce "significantly

---

[49] Deposition of James W. Davis: p. 196, lines 4 – 8.
[50] Deposition of Mary Mills: p. 21, 7 – 8; p.22, 9 – 12; Response by Mary Mills to Inquiry by Derrick Elias.
[51] Response by Mary Mills to Inquiry by Derrick Elias.

probative evidence" to establish pretext. *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993).

In *Thomas v. Nicholson,* 263 Fed. Appx. 814 (11th Cir. 2008), the Plaintiff was terminated based on the employer's proferred reason—poor work performance. Just as in the instant case, Plaintiff argued that the stated reason was a pretext for racial discrimination.

In *Thomas*, the Plaintiff's alleged evidence consisted of statements the Plaintiff made that the employer "set him up to fail" and that management "kept him out of the loop" when assigning personnel to certain committees. Additionally, the Plaintiff introduced letters of various co-workers as to his competence.

The facts in the instant case are analogous to those in *Thomas* case. Here, as in *Thomas*, the Plaintiff complains of not being assigned to a peer review committee ("administrative review") and not having sufficient communication from his supervisor Mary Mills. Furthermore, the bulk of the Plaintiff's entire cannonade of grievances against his Supervisor Mary Mills is an argument similar to that made in the *Thomas* case, where the employee alleged the employer "set him up to fail." In the instant case, the Plaintiff alleges that he was somehow prevented from being allowed to testify at a juvenile probation hearing, while under subpoena, when the Circuit Court Judge called on another employee of the Department of Juvenile Justice. However, there is not one scintilla of evidence to remotely suggest that anyone prevented him from testifying or that racial animus contributed to the situation. In fact, the Plaintiff in his deposition testified that he did not know whether race played a role in the decision to have Shelley

McKinney appear in court and testify.[52] It is well settled that "Unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987).

In affirming summary judgment for the employer in *Thomas*, the 11th Circuit found that the Plaintiff failed to demonstrate a genuine issue of fact as to whether the employer's stated reason for termination was pretextual: "Thomas did not present *any* evidence, let alone 'significantly probative evidence' to rebut the VA's proferred reason that it fired him for poor performance." *Thomas* at 817.

With regard to the single written reprimand and subpar performance evaluations, Plaintiff admits that he never stated in his rebuttal or otherwise complained to management while employed with the Department that he was being treated differently because of his race.[53] When asked specifically what facts the Plaintiff had to form the basis for believing he was fired because of his race, his response was "by the mere fact that" prior to Mary Mills being his supervisor he "never had any incidents with reprimands, verbal nor written, nor subpar evaluations."[54] However, Mr. Davis offers no evidence that the single written reprimand of March 24, 2008 or the two annual evaluations were based on the color of his skin or invidious discrimination.

---

[52] Deposition of James W. Davis: p. 199, line 14 to p. 200, line 22.
[53] Deposition of James W. Davis: p. 198, lines 12 – 25.
[54] Deposition of James W. Davis: p. 195, lines 14 – 21.

## IV.    CONCLUSION

In the final analysis, James W. Davis was a selected exempt employee who was fired after his supervisor, Mary Mills, recommended termination based on poor work performance. The recommendation was reviewed and approved by the Assistant Secretary and Deputy Secretary of the Department of Juvenile Justice. The Plaintiff's complaints center on a single written reprimand, two annual performance evaluations with which he is dissatisfied, and his termination. The Plaintiff cannot offer any significantly probative evidence to show that the Defendant's reason for termination was pretextual. Therefore, summary judgment should be entered in favor of the State of Florida, Department of Juvenile Justice.

Respectfully Submitted,

/s/ Jeffrey S. Howell
Jeffrey S. Howell [FBN: 0793840]
Phipps & Howell
201 South Monroe Street, 4th Floor
Tallahassee, Florida 32301
Phone: 850-222-7000
Facsimile: 850-222-7000
capitolawyer@aol.com
Attorney for Defendant
State of Florida
Department of Juvenile Justice

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Supplemental Memorandum in Support of Defendant's Motion for Summary Judgment has been furnished via CM/ECF to Erika E. Goodman, Erika E. Goodman, P.A. and Marie A. Mattox, Marie A. Mattox, P.A. this 8th day of March 2012.

/s/Jeffrey S. Howell
Jeffrey S. Howell