**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**JAMES W.  DAVIS,**

      **Plaintiff,**                   **CASE NO.  4:11-cv-00107-RH-WCS**

**vs.**

**DEPARTMENT OF JUVENILE JUSTICE**
**STATE OF FLORIDA,**

      **Defendant.**
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S SUPPLEMENTAL**
**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, JAMES W. DAVIS, through counsel, files this Response in Opposition to

Defendant's Supplemental Memorandum in Support of Summary Judgment as follows:

**I.  SUMMARY OF ARGUMENT**

    In supplementing summary judgment, Defendant asserts that "Plaintiff cannot

articulate concrete facts, other than his own subjective view, that his termination. . .was

for reasons other than for those given by managers and supervisors. . . " [Defendant's

Supplemental Memorandum p. 1-2].  Defendant is wrong.  Both in his original response

in opposition to summary judgment and below, Plaintiff submits a litany of evidence to

demonstrate that his termination was pretextual.

## II.  SUMMARY JUDGMENT IS IMPROPER IN THIS CASE[1]

In its supplemental memorandum, the Department contends that Plaintiff was fired due to performance issues.  Most, if not all,  of the testimony proffered by the Department in this regard speaks only in generalities with regard to issues with Plaintiff's work performance. [See Defendant's Supplemental Memorandum p. 9]. Further, the documents Mills relied upon in firing Plaintiff lack specificity. [See Document 28-2 pp. 69-70, 73-78, and 96-98].   In evaluating a summary judgment motion, [t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could find them unworthy of credence. Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir.1997) (internal quotations and citations omitted).

Plaintiff has met this burden through his original submission to this Court in opposition to summary judgment but offers additional facts and arguments below which demonstrate weaknesses, implausibilities, incoherencies and inconsistencies in the Department's stated reason, i.e. poor performance, for Plaintiff's termination.

---

[1]      Plaintiff incorporates herein the Statement of Facts and all arguments made in his original Response in Opposition to Defendant's Motion for Summary Judgment.

**1.      The Department Cannot Absolve Itself of Liability Simply Because Two Others Signed Off On Davis' Termination**

As previously set forth in Plaintiff's original Response in Opposition to Defendant's Motion for Summary Judgment,"[w]here the titular decision-maker is no more than a 'cat's paw', courts have looked beyond the formal structure of the decision-making process and held that defendant companies are liable for the invidious bias of the de facto decision-maker." Bernstein v. Sephora, 182 F. Supp. 2d 1214, 1218 (S.D. Fla. 2002), Jones v. Gerwens, 874 F.2d 1534, 1541 n. 13 (11th Cir.1989).

The record is clear that Mills was the individual that fired Plaintiff.  While both Darryl Olson and Rod Love had to "sign-off" on the recommendation, neither of them had any personal knowledge of Plaintiff or his work performance. [Olson deposition p.19 lines 17-19 and Love deposition p. 28 lines 2-9, ].  Olson primarily relied upon information provided by Mills and Love does not know what, if any, information he relied upon. [Olson deposition p.13 lines 6-19 and Love deposition p. 28 line 15 through line 29 line 9].   Notably, Love did not even know what reason(s) Mills provided to support Plaintiff's termination. [Love deposition p. 31 lines 1-9].

The only relevant admissible evidence Love can provide with respect to Plaintiff's termination is the fact that he signed a document approving the termination and authorizing Plaintiff to resign in lieu of termination.  Love cannot provide any

3

evidence beyond this as:

- Love does not recall Plaintiff;

- Love does not recall Plaintiff's employment with the Department;

- Love has no first hand knowledge of Plaintiff's work performance;

- Love cannot recall what documents, if any, he reviewed in approving Plaintiff's termination;

- Love does not know what reasons, if any, Mills provided him for wanting to fire Plaintiff;

- If he had any information to support Plaintiff's termination, all of this information would have been provided by Mills;

[Love deposition p. 27 line 25 through p. 31 line 15, p. 42 lines 15-20].

## 2.    **False Reason**

In responding to summary judgment initially, Plaintiff offered a litany of witnesses who all testified regarding Plaintiff's superior abilities and performance as a supervisor.  In addition to these witnesses, Plaintiff has filed the Affidavit of Carolyn Floyd, his supervisor immediately preceding Mills.  Floyd has testified that Mr. Davis was an exemplary employee and one of the most dedicated, knowledgeable, and hard working employees that she supervised throughout her career in State Government.

[Floyd Affidavit ¶4].  Further, according to Floyd, Plaintiff always did what it took to get the job done, was a team player, and an outstanding supervisor. [Id.].

In offering excerpts of testimony from Mary Mills' deposition, the Department in his deposition testimony that his Supervisor Mary Mills 'on four to six - on four to six different occasions, she would call me or if she happened to be in Pensacola, she would tell me that she's getting complaints against me and my staff members.'" [Defendant's Supplemental memorandum p. 3 citing to p. 150 lines 8-12 of Plaintiff's deposition]. However, the Department misconstrues this testimony.  This testimony was elicited from a question regarding Plaintiff's response to interrogatory 4 in which he stated "Mary Mill's allegations of receiving complaints - no documents could be produced" See Plaintiff's Answers to Defendant's First Interrogatories filed as Documents 52-10 and Plaintiff's deposition p. 150 lines 2-19.  The testimony regarding this question is as follows:

Q.     Okay. It says, "Mary Mills' allegations of receiving complaint.  No document could be produced."  What does that mean?  You could produce them?

A.     No.  This is in reference to Mrs. Mills.

Q.     What do you mean by that statement in your interrogatory answer?

A.     Under 4-A, Mary Mills on four to six - - on four to six

5

different occasions, she would call me or if she
happened to be in Pensacola, she would tell me that
she's getting complaints against me and my staff
members.  And then when I asked who was making
the complaints, what the allegations were, and her
answers ranged - - were I really don't want to share
that information with you because it might come up
again.

On all of these allegations of the complaints that she
said she was receiving, you know, later on, she would
always come back and say pretty much that, you
know, they panned out not to be true.

[Plaintiff's deposition p. 150 lines 2-19].  While Plaintiff did "acknowledge" that Mills

advised him of alleged complaints, he further testified that Mills refused to provide him

with specifics about the complaints and that she ultimately admitted that each

complaint was unfounded. [Id.].

Mills' testimony stating that one of the reasons she fired Plaintiff was due to

complaints that she received from others is similarly unworthy of belief as Mills admitted

that each complaint was baseless. [Plaintiff's Affidavit 22, Plaintiff's deposition p. 150

lines 8-19].

The Department claims that Love "stated that Mary Mills communicated the

reasons for the termination up through the chain of command." [Defendant's

Memorandum p. 6].  This is an inaccurate representation of Love's testimony.  In reality,

6

all Love could say in this regard was that he "believed" that Mills communicated the reasons for Plaintiff's termination up the chain of command. [Love deposition p. 21 line 25 through p. 22 line 9]. Furthermore, while the Department contends that there is some evidence that Love was aware of Plaintiff's performance issues at the time he approved Plaintiff's termination by virtue of the fact that Plaintiff copied Love on his rebuttal to the written reprimand, Love admitted that he could not recall whether he ever received or read Plaintiff's rebuttal. [Defendant's Supplemental Memorandum p. 8, Love deposition p. 25 lines 6-7]. Notably, Love cannot recall ever denying a request to terminate. [Love deposition p. 31 line 25 through p. 32 line 2].

The "performance issues" Mills allegedly had with Plaintiff all related to his performance as a supervisor of his subordinates. [Mills deposition p. 25 lines 9-14, p. 27 line 9 through p. 28 line 7]. Mills claimed that there were issues with Plaintiff's subordinates, primarily, Deb Sasser, and that Plaintiff did not correct these deficiencies. This reason is not worthy of belief, as set forth more fully in Plaintiff's response to summary judgment, if this were the true reason Plaintiff was fired, Mills had the option of demoting Plaintiff to a commitment manager, which she did not do. [Mills deposition p. 48 line 25 through p. 49 line 2].

Further, Mills testified that the basis for Plaintiff's termination were all contained

in three documents, the March 24, 2008 reprimand, the 2007-2008 performance evaluation, and the 2008-2009 performance evaluation. [Mills Deposition p. 38 lines 8-14]. Thus, the Management Reviews referenced by the Department are not relevant to the issue of Plaintiff's termination. However, assuming arguendo, that these reviews are relevant, Plaintiff set forth considerable evidence in his original response to summary judgment to establish pretext with regard to the Management Reviews as well.

The Department falsely claims that Plaintiff cannot demonstrate that he ever made any attempt to meet Mills' expectations of an OMC Chief. In fact, Plaintiff did everything Mills requested of him and she was aware of such efforts. [Plaintiff's Affidavit ¶¶19-20].

## 4.    Bootstrapping

An employer cannot "bootstrap" itself into immunity from a Title VII violation by deliberating handicapping the performance of an employee and then citing that performance as the basis for adverse action. See Edwards v. Hodel 738 F. Supp. 426 (D. Colo 1990)(excuse that blacks were not promoted because they lacked certain training was found pretextual when it was revealed that blacks had been excluded from that very training.); Stemmons v. Missouri Department of Corrections, 82 F.3d 817 (8th Cir. 1996)(jury verdict of race discrimination upheld where, as part of evidence of pretext,

8

the plaintiff was criticized for the way she was dressed for the interview but was prohibited by her supervisor from leaving her class early to change clothes for the interview and just before the interview, the superintendent of the institution spoke demoralizing words to her, which caused her to be upset during the interview).

The record reflects that Mills was criticizing Plaintiff for actions that the Department created.   As commitment manager supervisor of the Northwest Region, Mr. Davis was faced with several unique challenges. [Floyd Affidavit ¶6].   These challenges included, without limitation, having one of the highest number of commitments compared to the other commitment manager supervisors, being was short staffed, and having the largest geographic area to manage of all of the commitment managers supervisors. [Id.].   As a result of this under-staffing, Plaintiff had to not only perform his supervisory duties but had to perform the overflow work that his staff could not due to their work load. [Id. at ¶7].   Thus, it is clear that Mills' complaints regarding Plaintiff's performance were all caused by the Department's own actions and as such, the Department cannot immunize itself from liability behind these reasons.

The Department's reliance on Thomas v. Nicholson, 263 Fed. Appx. 814 (11th Cir. 2008) is misplaced.  In Thomas, the plaintiff offered no evidence of pretext and made the bald assertions that the Defendant "set him up to fail" and "kept him out of the

9

loop" by not assigning him to several committees.  Thomas, 263 Fed. Appx. at 817.  In

the case sub judice, Plaintiff has offered a plethora of credible compelling evidence of

pretext both in his original response to summary judgment and in the instant response

to Defendant's supplemental memorandum.

 For all the reasons stated above as well as those set forth in Plaintiff's Response

in Opposition to Summary Judgment, genuine issues of fact remain and Defendant's

Motion should be denied.

    Respectfully submitted,

     /s/ Erika E. Goodman
    Erika E. Goodman [FBN 0060951]
    ERIKA E. GOODMAN, P.A.
    2931 Kerry Forest Parkway, Suite 202
    Tallahassee, Florida 32309
    (850) 210-1100 (telephone)
    (850) 210-1190 (facsimile)
    COUNSEL FOR PLAINTIFF

### CERTIFICATE OF SERVICE

 I HEREBY CERTIFY that a true and correct copy of the foregoing notice has been furnished  by CM/ECF to all counsel of record  this 15th day of March, 2012.

     /s/ Erika E. Goodman
    Erika E. Goodman