UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES W. DAVIS,

Case No.  4:11-cv-00107-RH-WCS

     Plaintiff,

vs.

DEPARTMENT OF JUVENILE JUSTICE,
STATE OF FLORIDA,

     Defendant.

_____/

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, DEPARTMENT OF JUVENILE JUSTICE, STATE OF FLORIDA ("Department" or "Defendant"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 56 and this Court's February 15, 2012 Minute Entry (Doc. 48), files this reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment and Response in Opposition to Defendant's Supplemental Memorandum in Support of Motion for Summary Judgment and in support thereof states:

**I.      SUMMARY OF ARGUMENT**

This Court should grant Defendant's Motion for Summary Judgment because Plaintiff is unable to proffer evidence creating a disputed issue of material fact.  To avoid summary judgment in favor of the employer in a Title VII action, a plaintiff "must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993); *Brooks v. County Com'n of Jefferson County, Alabama*, 446 F.3d 1160, 1163 (11th Cir. 2006).  To show that the legitimate,

non-discriminatory reason offered by the defendant is a pretext for discrimination, the plaintiff must meet the proffered reason head on and rebut it. *Harrison v. IBM Corp.*, 378 Fed. Appx. 950, 954 (11th Cir. 2010) (citation omitted).  A reason is not a pretext for discrimination unless "it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Johnson v. City of Mobile, Alabama*, 321 Fed. Appx. 826, 830 (11th Cir. 2009) (emphasis in original) (*St. Mary's Honor Ctr. V. hicks*, 509 U.S. 502, 515 (1993).

Plaintiff, in his responses, fashions a series of six different legal theories in hopes that one might prove sufficient to deny Defendant's Motion for Summary Judgment, including: "False Reason," "Shifting Articulation," "Deviation from Policies and Procedures," "Bootstrapping," "Subjective Criteria," and a "Cat's Paw" theory.  Each theory is an attempt to divert the Court's attention from the legitimate, nondiscriminatory and only reason for Plaintiff's termination: his work performance.  In addition, each theory lacks sufficient supporting evidence to prove that unlawful discrimination was ever an element of any employment decision (as they must), and altogether fail to give reason for this Court to deny Defendant's Motion.  This Court should hold that Plaintiff has not created a genuine issue of material fact despite his attempts to do so through speculation, conjecture, and merely colorable and not significantly probative evidence, and grant Defendant's Motion in full.  *See Vega v. Invsco Group, Ltd.*, 432 Fed. Appx. 867, 869 (11th Cir. 2011).  Defendant briefly responds to each theory in turn.

1.      **False Reason**

Plaintiff asserts in his response, "once the employer's justification has been eliminated, discrimination may well by [sic] the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason got its decision." (*Emphasis supplied, internal quotations omitted*).  However, Plaintiff proffers no evidence worthy of

2

impeaching or eliminating the Defendant's legitimate and nondiscriminatory reason for terminating Plaintiff's employment. Plaintiff introduces testimony from Department employees (most of whom were either hired by Davis and were under his supervision or were not supervised by Mr. Davis[1]) to suggest that Plaintiff was conscientious, dedicated, and a good supervisor.

This testimony is irrelevant to the decision to be made by this Court and is otherwise not significantly probative of pretext for race discrimination. The evidence shows that these basic, overbroad character traits were not criteria used by the Department in evaluating the performance of its employees.[2] Further, there is no evidence in the record that any of these witnesses have personal knowledge as to the contents of Plaintiff's 2007-08 or 2008-09 performance evaluations or that they had any direct involvement in ensuring that the Plaintiff was meeting the Department's standards for performance.

Thus, Plaintiff's attempt to skirt around the specifically enumerated performance concerns set forth in Plaintiff's 2007-08 and 2008-09 performance evaluations fails to meet "head on" the legitimate, nondiscriminatory reason for Plaintiff's termination set forth by the Defendant.

With respect to Mr. Tallon, this Court should disregard any of his testimony related to Plaintiff's job performance. This is because Mary Mills became Plaintiff's two years after the Plaintiff had stopped reporting to Mr. Tallon.[3] There is no record of Carolyn Floyd ever doing a performance evaluation on the Plaintiff for the years 2005-06 and 2006-07. Additionally, while Plaintiff has submitted an affidavit from Ms. Floyd, he has not presented any evidence that she had any knowledge of Plaintiff's work performance under Mary Mills. It would be pure

---

[1] Deposition of Suzanne Chambers: p. 7, lines 3 – 6; Deposition of Debra Sasser p. 25: lines 4 – 5; Deposition of Wanda Horgan: p. 18, lines 8 – 17; Deposition of Greg Brown: p. 10, lines 6 – 7.

[2] Plaintiff's 2007-08 and 2008-09 performance evaluations.

[3] Deposition of James W. Davis: p. 23, line 23 to p. 25, line 8; Deposition of Mary Mills: p. 6, lines 13 – 16.

conjecture, at best, to simply assume that Davis would continue to perform his duties exactly the same way under Tallon or Floyd as he would under Mills.   Plaintiff offers no evidence to suggest that his performance was maintained at the same level from the time Mr. Tallon was his supervisor through the time he was supervised by Ms. Mills.  Instead, he asks the Court to take his word that he performed at a perfectly consistent level from 2005 through 2009 under three different supervisors.

Shelley McKinney, who was not an employee under Davis's supervision, explained that she was involved in two complaints concerning Davis's work performance.[4]  McKinney, the Chief Probation Officer for Circuit 2 at the time, received the two complaints from her supervisor, Paula Polhill.[5]  This corroborates Mary Mills's testimony that she received complaints from stakeholders outside of the Residential Services Division concerning the Plaintiff.[6]  Thus, The legitimate, nondiscriminatory, reason for the termination of Plaintiff's employment is not baseless, as the Plaintiff claims, and the Defendant's reason has not been eliminated nor even called into question.  *See Reeves v. Sanderson Plumbing Prods., Inc.* at 147.

Other testimony suggesting that Ms. Mills "set Davis up to fail," such as what Plaintiff intimates from Debra Sasser's deposition excerpt, is pure conjecture and irrelevant with respect to the documentation of Plaintiff's problems with his work performance over the span of almost two years under Mary Mills.  The Plaintiff's attempt in this case to manufacture a conclusory and self-serving assertion in his response should be disregarded by this Court.

Plaintiff makes a bare assertion in his Response to Defendant's Supplemental Memorandum (Doc. 55) that Defendant "speaks only in generalities with regard to issues with Plaintiff's work performance."  However, the evidence shows that Mary Mills set forth very

[4] Deposition of Shelley McKinney: p. 9, lines 13 – 24.
[5] Deposition of Shelley McKinney: p. 6, lines 20 – 24; p. 6, lines 13 – 24; p. 11, lines 5 – 6.
[6] Deposition of Mary Mills: p. 52, lines 5 – 24.

4

explicit concerns about Plaintiff's performance in multiple documents.[7]  Plaintiff ironically points out a specific reason in page 7 of his Response to the Supplemental Memorandum that "Mills claimed there were issues with Plaintiff's subordinates, primarily, Deb Sasser, and that Plaintiff did not correct these deficiencies."

Instead of proffering any evidence that he did not have performance issues, Plaintiff provides self-serving hearsay in his affidavit, alleging that Mary Mills admitted her complaints were baseless.  There is no credible evidence suggesting that Mary Mills made any such admissions or that she ever found that complaints made against the Plaintiff were without merit.  Therefore, this Court should grant Defendant's Motion for Summary Judgment because Plaintiff cannot demonstrate that the Defendant's proffered reasons for Plaintiff's termination are unworthy of credence.

## 2.      Shifting Articulation

If an employer offers different reasons for terminating an employee, those reasons must be inconsistent in order to constitute evidence of pretext. *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453 (11th Cir. 1997).  In *Zaben v. Air Products & Chemicals, Inc.*, a disparate treatment case, the court held that the differing reasons articulated by the employer were not inconsistent.  In *Zaben*, although the defendant company gave differing explanations for the selection of employees to be discharged by saying, on the one hand, that seniority played no role in the process and that only an employee's performance was considered while, on the other hand, asserting that the plaintiff was discharged because he had the least seniority, the district court

---

[7] For example, the March 24, 2008 Written Reprimand provides, "Over the last seven weeks you and I have discussed several areas of concerns [sic] relating to your job performance.  We have discussed several incidents where the commitment/transfer paperwork did not arrive at the program.  I have spoken with you about complaints I have received about your staff not working with stakeholders.  There have been incidents of your staff not following through with the transfer and placement of youth."  Also, the Commitment Management Administrative Review for the 14th circuit lists 13 specific issues and areas for improvement requiring attention.  Other documents listing specific deficiencies include Plaintiff's 2007-08 and 2008-09 evaluations, two 2008 performance reviews, and the Commitment Management Administrative Review for the 1st Judicial Circuit.

found that these differing reasons were not necessarily inconsistent.

Plaintiff attempts to depict the Defendant as having provided differing reasons for its decision to terminate the Plaintiff. However, there is documentation throughout the 16 months prior to Plaintiff's termination that consistently sets forth problems with Plaintiff's work performance.[8]  The affidavits and deposition testimony of Mary Mills and Darryl Olson both explain that the reason for Plaintiff's termination was his work performance.[9]  Even assuming that the Defendant propounded differing explanations for Plaintiff's termination, it is not inconsistent to state that an employee's services are no longer needed the employee has a documented history of deficiency over the span of nearly a year and a half. Further, the Defendant has no control over the fact that a different agency, the Agency for Workforce Innovation, described the purpose for separation as "lack of work."  Accordingly, this Court should hold that Plaintiff fails to create pretext because he cannot present evidence that the Defendant articulated different, inconsistent reasons for his termination.

**3.     Deviation from Policies and Procedures**

In his response, Plaintiff fails in attempting to show that Defendant deviated from the Department's procedures for termination of an employee.  Plaintiff purports to demonstrate some insidious conspiracy against him by noting that Wanda Horgan, personnel liaison for the North Region of Residential Services, was not the employee to process Plaintiff's termination documentation.  What he fails to mention is that Ms. Horgan and Mr. Davis had been working in the exact same office building since 1992, interacting with each other on a daily basis.[10]  He also incorrectly asserts that the employee who did handle the termination documents, Jeanine Rhodes,

---

[8] See March 24, 2008 Written Reprimand; Commitment Management Administrative Reviews for 1st and 14th Circuits; 2008 Performance Reviews; 2007-08 and 2008-09 performance evaluations.
[9] Affidavit of Mary Mills; Affidavit of Darryl Olson; Deposition of Mary Mills: p. 17, line 24 – p. 18, line 4; Deposition of Darryl Olson: p. 13, lines 6 – 10.
[10] Deposition of Wanda Horgan: p. 18, line 6 to p. 19, line 7.

was not involved in personnel issues.  This is false, as Ms. Rhodes is the business manager located in Tallahassee, not Pensacola, who supervised Ms. Horgan.[11]

Plaintiff cites no Department policy or procedure that proscribes Ms. Horgan's supervisor from handling the termination documentation for the Plaintiff.  It is a far stretch to suggest that utilizing the personnel liaison's supervisor means that the actual procedures of the decision-making process had been altered.  There is no evidence in the record that any personnel process in this matter was ever adulterated.

Finally, Plaintiff asserts in his response to the Supplemental Memorandum that the Commitment Reviews[12] are not relevant to the issues of Plaintiff's termination and makes the simple assertion, without argument or evidence in support, that they are pretextual.  There is no evidence that Mary Mills did not consider the Commitment Reviews in recommending termination.  Assuming *arguendo* that she did not consider the content of the Commitment Reviews, the record shows that her supervisor, Darryl Olson, did in fact consider the Commitment Reviews in approving Plaintiff's termination.[13]  Plaintiff has not presented any evidence, let alone significantly probative evidence, demonstrating that reliance on the Commitment Reviews in making the decision to terminate Plaintiff was pretext for race discrimination.  Therefore, this court should hold that the Plaintiff has failed to create a genuine issue of material fact.

## 4.    Bootstrapping

Plaintiff has offered no significantly probative evidence that Ms. Mills deliberately or otherwise handicapped the Plaintiff from sufficiently meeting the Department's standards for work performance.  Moreover, Plaintiff does not present any records that demonstrate the

---

[11] Deposition of Wanda Horgan: p. 20, lines 22 – 24; Deposition of Mary Mills: p. 33, lines 18 – 25.
[12] Commitment Management Administrative Reviews for 14th and 1st Circuits.
[13] Deposition of Darryl Olson: p. 13, lines 6 – 19.

workload borne by the commitment management staff under Plaintiff's supervision.  Subjective opinion testimony from Carolyn Floyd's affidavit aside, Plaintiff has presented no evidence of any deliberate understaffing of the commitment management program under his supervision.

The affidavit of Carolyn Floyd merely serves to laundry list a bill of particulars that "Mr. Davis was faced with several challenges," "was short staffed," "had to not only perform his supervisory duties but had to perform the overflow work that his staff could not due [sic] to their work load."  What her affidavit is unable to do is establish that: (1) she had personal knowledge of Plaintiff's performance under Mary Mills; (2) the other commitment management staffs in the state had demonstrably lesser workloads or that other OMC Chiefs did not have to handle "overflow work"; and (3) Mary Mills purposefully arranged her resources (and had the requisite authority to do so) to under-staff Davis and affect his performance or that Mary Mills caused the challenges she alleges he faced.  As it otherwise stands, the content of Ms. Floyd's affidavit fails to directly respond to or rebut the Defendant's proffered reason for Plaintiff's termination.

Instead, the record reflects that Ms. Mills consistently documented her efforts to bring to Davis's attention the problems reported to her from neutral, third parties concerning the organization and communication of his staff.  Ms. Mills repeatedly communicated with the Plaintiff to help outline a path for the Plaintiff's improved performance.[14]  Therefore, this Court should hold that Plaintiff has failed under this theory to create a genuine issue of material fact.

## 5.    Subjective Criteria

Plaintiff presents no evidence that he was subjected to different policies and procedures for evaluations and disciplinary actions from other Department employees.  Instead, he asks this Court to hold in suspicion the Department's standard evaluation criteria and forms.  Plaintiff

---

[14] See March 24, 2008 Written Reprimand; Commitment Management Administrative Reviews for 1st and 14th Circuits; 2008 Performance Reviews; 2007-08 and 2008-09 performance evaluations.

further asserts that Ms. Mills "punished" him multiple times within the same time period for the same offenses. This is a gross mischaracterization of the record. Plaintiff received a written reprimand on March 24, 2008.[15] The reprimand specifically cites Plaintiff's violations of Rules 60L-36.005(3)(a), and (c), F.A.C. and explains the deficiencies in Plaintiff's work performance and the need for improvement in certain enumerated areas. There is no other evidence in the record of any "punishment." Thus, this Court should hold that Plaintiff has failed to create a genuine dispute of material fact under this theory.

**6.    Cat's Paw**

Plaintiff's final theory alleges that Assistant Secretary Darryl Olson and Deputy Secretary Rod Love blindly and without question approved the recommendation that he be terminated. However, the record shows that Darryl Olson had repeatedly conferred with Mary Mills about Plaintiff's performance issues and had independently taken into consideration the problems identified in two Commitment Management Administrative Reviews conducted in Davis's region.[16] Gene McMahon, not Mary Mills, conducted these reviews.[17]

Plaintiff also asserts that Mr. Olson and Mr. Love "immediately approved her request to fire Davis." This assertion has no basis in the record. The memorandum signed by Mr. Olson was sent to his office on July 6, 2009, but his signature is dated July 21, 2009.[18]

As for Rod Love, the Defendant explained in its Supplemental Memorandum (Doc. 51) that Mr. Love was directly involved in the review process before initiation of terminations, looked into the reasons for termination behind every recommendation that came to his desk, and

---

[15] March 24, 2008 Written Reprimand
[16] Deposition of Darryl Olson: p. 13, line 2 – p. 17, line 8; p. 20, lines 15 – 23.
[17] Deposition of Darryl Olson: p. 14, lines 7 – 17.
[18] July 6, 2009 Memorandum to Darryl Olson.

had denied or modified requests for termination while acting as Deputy Secretary.[19]  Further, Mr. Love testified that he had no reason to believe he had not given a thorough review of the request to terminate the Plaintiff.[20]  Thus, Rod Love was not a "rubber stamp."

Because the Plaintiff is unable to bring forth any disputed issue of material fact in relying solely on conjecture, speculation and merely colorable evidence, Plaintiff has failed to provide significantly probative evidence showing the Defendant's asserted reason is merely a pretext for discrimination or that the underlying reason for Plaintiff's termination was his race. Accordingly, this Court should grant Defendant's Motion for Summary Judgment in full.

DATED this 19th day of March 2012.

Respectfully submitted,

/s/Jeffrey S. Howell
Jeffrey S. Howell
Phipps & Howell
Florida Bar No.: 0793840
201 South Monroe Street
4th Floor
Tallahassee, Florida 32301
Attorney for Defendant
State of Florida
Department of Juvenile Justice

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March, 2012, I electronically filed Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment with the Clerk of Court, in the United States District Court for the Northern District of Florida, Tallahassee Division, by using the CM/ECF system which will send a notice of electronic filing to Plaintiff's attorneys Erika E. Goodman, Erika E. Goodman, P.A., 2931 Kerry Forest Parkway, Suite 202, Tallahassee, Florida 32309 and Marie A. Mattox, Marie A. Mattox, P.A., 310 East Bradford Road, Tallahassee, Florida 32303.

/s/Jeffrey S. Howell
Jeffrey S. Howell

---

[19] Deposition of Rod Love: p. 8, line 25 to p. 9, line 18; p. 20, lines 20 – 23; p. 10, line 10 to p. 11, line 9.
[20] Deposition of Rod Love: p. 18, lines 14 – 22.